UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NORMAN LAURENCE,<br>     Plaintiff,<br><br>  v.<br><br>PETER F. NEROHNA, ATTORNEY GENERAL, et al.,<br>     Defendants. | :<br>:<br>:<br>:   C.A. No. 24-00001-JJM-PAS<br>:<br>:<br>:<br>: |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Having been granted *in forma pauperis* ("IFP") status by the Court, Plaintiff Norman Laurence, a prisoner proceeding *pro se* in this case brought pursuant to 42 U.S.C. § 1983, has filed a motion for "courts assistance getting attorney for serious medical diseases," ECF No. 13, and a motion for "courts assistance with expert witness," ECF No. 12. Plaintiff alleges that he suffers from a "serious" and "difficult" medical condition ("Hashimoto's Disease"), which damages the heart, brain and other organs when not treated properly. ECF Nos. 1 at 3; 12 at 1; 13 at 1. According to the Complaint, the treatment is a medication called levothyroxine, whose efficaciousness depends on the timing (in relation to eating) of the dose; Plaintiff believes that he "need[s] an operation on [his] heart" and will "die soon according to C/Os [correctional officers]." See ECF No. 1 at 3-5. As Defendants, Plaintiff has named the Attorney General of Rhode Island (Peter F. Neronha, misspelled as "Nerohna"), five officials of the Rhode Island Department of Corrections ("RIDOC") (Acting Director Wayne T. Salisbury Jr., Warden Corry, Deputy Warden Rachel Bray, Correctional Officers Alfred Zannini and John Santagata), and three RIDOC medical providers Medical Director Kimberly Kane, MD, RN Nurse C/O David Piccirillo, and RN C/O Dacia Montenegro).

No objection has been asserted to the motions. They have been referred to me for determination. See 28 U.S.C. § 636(b)(1)(A); DRI LR Cv 72(a).

## I. Background

In 2000, Plaintiff was convicted of a 1997 murder following a jury trial – "brutally beat[ing] [his girlfriend] to death." State v. Laurence, 18 A.3d 512, 515-16 (R.I. 2011). He was sentenced to life in prison without parole with additional concurrent sentences for conspiracy to murder and breaking and entering. Id. at 516-17. During the years that followed, Plaintiff was an active litigant in this Court until 2011, when he apparently became a three-striker, barred from *in forma pauperis* status unless the pleading alleges imminent danger of serious physical injury. Laurence v. Wall, C.A. No. 07-081ML, 2011 WL 2358564, *3 (D.R.I. May 18, 2011), adopted, 2011 WL 2357357 (D.R.I. June 8, 2011) ("This dismissal shall constitute the 'third strike' for purposes of 28 U.S.C. § 1915(g)."). In this decision, the Court noted that Plaintiff's filings were "somewhat disorganized and rambling"; were repetitive of claims previously dismissed; and were reflective of "exactly the type of case and litigant that Congress had in mind when it enacted the []screening requirement." Id. at *1-3. The Court also found that the claims seemed to be impacted by Plaintiff's self-described mental health diagnoses – "'delusional' and 'paranoid.'" Id. at *3. When this Court subsequently rejected Plaintiff's habeas petition in 2013, it similarly considered Plaintiff's allegations of medical diagnoses of "delusional disorder, paranoia, psychotic, with poor judgment." Laurence v. Wall, C.A. Nos. 13-128L, 13-129L, 2013 WL 5755089, at *10 (D.R.I. Oct. 23, 2013).

In the current case, so far, Plaintiff has filed over four hundred pages of mostly handwritten, disorganized, rambling and repetitive material, interspersed with copies of medical information, medical treatment records and correctional records. He alleges that his medical

treatment for a serious thyroid disorder called Hashimoto's disease is inadequate, resulting in a heart valve injury and brain injury.  However, the medical records that Plaintiff has incorporated reflect frequent medical attention, including consultation with a dietician, laboratory testing, CT scans of heart and abdomen, MRI, out-of-ACI treatment with a urologist, and frequent appointments with a qualified mental health professional, an advanced practice nurse and a physician assistant to address urinary issues, hypothyroidism, prediabetes, hematuria, paranoid schizophrenia and delusional disorder, including focus on the optimal dosing regime for levothyrozine, as well as to monitor his heart with physical examination observations and ECG testing.  ECF Nos. 3, 3-1, 3-2, 9, 11, 14.  As to the latter, all of the results of record are normal except one labeled as "suspected arm lead reversal."  ECF No. 14 at 84-92.  Plaintiff's filings reflect his belief that these normal tests have been manipulated in that they are actually the results of heart testing done on younger inmates.  ECF No. 13-1 at 1-4.  The incorporated medical records also reflect other beliefs held by Plaintiff, such as that he should eat large amounts of salt and avoid the sun.  ECF No. 3-2 at 19-20 (nurse educating Plaintiff that eating "2 salt packets at night" is not helpful and could be harmful, as well as that his symptoms are not caused by allergy to sun as Plaintiff believes).  The only treatment allegation that has conceivable support in the attached material relates to the timing (in relation to eating) of when he ingests his thyroid medication; however, the record reflects that RIDOC medical professionals were alerted to this concern, issued medical instructions to correctional officials regarding strategies to address it and that solutions were developed.  ECF No. 3-2 at 10-11, 15.  Plaintiff also claims that he has been denied access to medical information when he requests it; however, his filings include copies of material with medical information about thyroid disease and

3

appropriate diet, some with handwritten annotations by RIDOC personnel to assist Plaintiff's understanding of the medical information they were providing.  ECF No. 14 at 37-49.

In addition to the current case, since 2020, Plaintiff has maintained a civil action in the Superior Court, which is very active and remains pending.  Laurence v. Dep't of Corr., No. PC-2020-06822 (R.I. Super Ct.).  This case appears to address medical issues, among many other matters.  ECF No. 11 at 36.  In one of Plaintiff's filings in that case (dated July 2023), he represents that he had written to Attorney Amato DeLuca about his legal concerns, that Attorney DeLuca told Plaintiff he could ask him questions and that Plaintiff has been "waiting to hear from SIs to have his phone # be put on my phone list as attorney," but a RIDOC nurse told Plaintiff that "he is not your lawyer any more you must not of got the memo."  Mot. to Withdraw Mot. to Amend, Laurence v. Dep't of Corr., No. PC-2020-06822, at 4, 6-7 (R.I. Super. Ct. July 24, 2023).  In a January 2024 filing in this case, Plaintiff alleges that a correctional officer told him that "Amato DeLuca don't want my mail," ECF No. 14 at 3, as well as that Defendant Peter Neronha is allowing the confiscation of his mail to "Attorney Amato DeLuca for a serious medical condition Hashimoto's disease."  ECF No. 1 at 7; see ECF No. 14 at 17 (in response to Plaintiff's grievance, Plaintiff was advised that CCTV does not support his belief about conversation regarding mail pertaining to medical concerns).  Squarely contradicting Plaintiff's allegations about denial of access to Attorney DeLuca, Plaintiff also attaches a June 2022 letter to him from Attorney DeLuca, which states: "This letter is a follow-up to the discussion we had with you regarding your concerns of a possible case of medical negligence.  Based on the information you provided to our office, there appears to be insufficient evidence to warrant the pursuit of a medical negligence investigation. . . . Therefore, at this time, we are closing your temporary file."  ECF No. 11 at 26 (emphasis supplied).

In addition to his Superior Court civil case, Plaintiff alleges that, in December 2021, he was "in mental health court . . . being accused of being delusional . . . about my thyroid." ECF No. 3-1 at 4. As Plaintiff claims, in that proceeding, the court ordered that Plaintiff be given "a stack of medical records," which Plaintiff confirms was done by "attorney Michael J Pisaturo." ECF No. 13-1 at 1. Plaintiff has also filed an August 2022 letter he received from Attorney Pisaturo providing medical information that Plaintiff requested. ECF No. 14 at 20.

II.     **Applicable Law and Analysis**

The law does not create an absolute right to appointed counsel in a civil case. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991); Albanese v. Blanchette, C.A. No. 20-00345-WES, 2021 WL 5111862, at *1 (D.R.I. Nov. 3, 2021). In addition to establishing indigency, a civil litigant seeking the appointment of *pro bono* counsel must also sustain the burden of demonstrating that "exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." DesRosiers, 949 F.2d at 23. In determining whether exceptional circumstances exist, the Court "must examine the total situation, focusing, *inter alia*, on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself." Id. at 24. In making the determination, the Court may consider the litigant's ability to procure an attorney on his own, as well as, for a case like this one involving a claim that, if meritorious, could result in the recovery of attorney's fees, whether the reason for the difficulty in finding an attorney is because it is "a meritless case that no lawyer would take were the plaintiff not indigent." Stack o/b/o Doe v. Town of Lincoln Hous. Auth., C.A. No. 20-350WES, 2021 WL 1904537, at *2 (D.R.I. May 12, 2021) (internal quotation marks omitted); see Lim v. Westin Hotel, No. 89 C 3078, 1989 WL 44146, at *1 n.3 (N.D. Ill. Apr. 24, 1989) (noting "that the unwillingness of private counsel to take on

representation despite" the prospect of attorney's fees "might perhaps be viewed as an indication of the perceived doubtfulness of [plaintiff's] claims"). In exercising its discretion to appoint a *pro bono* attorney, the Court must also be mindful that "volunteer lawyer time is a precious commodity." Lockett v. Derose, Civil No. 3:CV-08-1643, 2009 WL 1917071, at *1 (M.D. Pa. July 1, 2009) (internal quotation marks omitted).

Plaintiff's motion for counsel stumbles at the first DesRosiers factor – the merits of the case. Having carefully reviewed all of Plaintiff's filings – the "total situation," DesRosiers, 949 F.2d at 24 – with the leniency required for all *pro se* litigants, I do not find that Plaintiff's claim has sufficient merit to establish that "exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." Id. at 23; see Estelle v. Gamble, 429 U.S. 97, 106 (1976). Rather, Plaintiff has presented documentation of his understandable fears (in light of his mental health diagnoses of paranoia and delusional thinking) about his serious medical conditions as he ages. However, his filings in this Court and the Superior Court reflect not only that, far from deliberate indifference, he is receiving significant medical treatment, but also that his records and complaints have been reviewed by a well-qualified attorney who opined that they do not even support a medical malpractice claim.[1]

Plaintiff's motion for counsel also fails due to Plaintiff's ability to access attorneys. Plaintiff's filings reflect his correspondence with Attorney Deluca, as well as his reliance on Attorney Pisaturo in connection with medical concerns. In a case like this one, based on 42 U.S.C. § 1983, which provides for an award of attorneys' fees to a prevailing claimant, these

---

[1] A viable claim of medical malpractice committed by prison-based providers is still not sufficient to state a claim of deliberate indifference pursuant to § 1983. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

6

facts establish that Plaintiff's difficulty in finding an attorney is more likely based on the "perceived doubtfulness of [his] claims." See Lim, 1989 WL 44146, at *1 n.3. The only DesRosiers prong that Plaintiff meets is his limited ability to litigate this case on his own. See 949 F.2d at 24. However, such lack of legal skill cannot carry the day for a case that is so lacking in merit and that has already been reviewed and rejected by a well-qualified attorney.

In sum, as of now, Plaintiff has failed to establish that his case has merit sufficient to justify a finding of exceptional circumstances. Therefore, I find that the denial of counsel will not result in fundamental unfairness impinging on his due process rights. See Buzon v. Forgue, C.A. No. 19-212WES, 2019 WL 2474123, at *2 (D.R.I. June 13, 2019).

The foregoing analysis and findings also apply to Plaintiff's motion asking the Court to appoint an expert to assist with understanding his disease. ECF No. 12. Pursuant to the Court's Plan for *Pro Bono* Representation in Civil Cases, an appointment of p*ro bono* counsel from the Panel would allow that attorney to access limited public funds on Plaintiff's behalf towards the costs of an expert. Plan for *Pro Bono* Representation in Civil Cases, (July 1, 2014), https://www.rid.uscourts.gov/civil-pro-bono-program (maximum reimbursement for most representations will not exceed $1,500 per case; in exceptional circumstances, court may reimburse up to $2,500 per case). However, with the Court's finding as of now that Plaintiff is not eligible for such an appointment, Plaintiff also is not eligible to access those funds. For the same reasons, as well as because Plaintiff seeks an expert solely for his own benefit, the Court further finds that this is not a circumstance where it should exercise its discretion to appoint an expert pursuant to Fed. R. Evid. 706, which is not intended to be wielded solely for the benefit of a particular party. See Gladu v. Maine Dep't of Corr., No. 1:20-cv-00449-JDL, 2022 WL 17369430, at *6 (D. Me. Dec. 2, 2022) ("Particularly in the context of prisoner litigation . . .

7

courts should appoint an expert sparingly given the considerable expense that would otherwise be imposed on governmental defendants," mindful that primary purpose of Fed. R. Evid. 706 is "not to benefit a particular party") (internal quotation marks omitted), appeal dismissed, No. 23-1006, 2023 WL 4344131 (1st Cir. June 2, 2023); see also McCauley v. Groblewski, No. 18-2167, 2020 WL 6265069, at *8 (1st Cir. July 28, 2020) (district court did not abuse discretion in denying motion for Rule 706 expert without prejudice); Lyons v. Wall, C.A. No. 08-498-M, 2012 WL 3682983, at *6 (D.R.I. Aug. 24, 2012) (despite discretion to appoint expert pursuant to Fed. R. Evid. 706, court finds insufficient showing to warrant appointment of expert and that dilemma of being unable to pay for expert does not differ from that of non-prisoner claimants).

### III.   Conclusion

Based on the foregoing, Plaintiff's motion for assistance in getting attorney (ECF No. 13) and motion for court's assistance with expert witness (ECF No. 12) are both DENIED without prejudice.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 28, 2024